NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS
California Bar No. 101281
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569
    Facsimile: (213) 894-0142
    E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-CV-11103 |
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6) |
| $40,620.00 IN U.S. CURRENCY, | [D.E.A.] |
| Defendant. | |

Plaintiff United States of America brings this claim against defendant $40,620.00 in U.S. Currency, and alleges as follows:

## JURISDICTION AND VENUE

1. The government brings this <u>in</u> <u>rem</u> forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $40,620.00 in U.S. Currency (the "defendant currency") seized on or about February 5, 2020 by law enforcement officers from a UPS parcel situated at the United States Postal Service facility located at 3140 East Jurupa Street, Ontario, California 91761 during the execution of a State of California search warrant.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Jermaine Taylor, Kelsey Walker and Randall Cook may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

### Interception of UPS Parcel Containing Narcotic Proceeds

8. On February 5, 2020, while monitoring packages at the United States Postal Service facility located at 3140 East Jurupa Street in Ontario, California, law enforcement officers saw on the inbound UPS Next Day air belts a parcel that displayed characteristics commonly associated with narcotic and narcotic proceeds mailings. The parcel's narcotic or narcotic proceeds characteristics that officers then observed included that the parcel had a "UPS Next Day Air Early" shipping label, the parcel, which weighed approximately 16 pounds, had its seams

heavily taped closed, and the parcel identified Jermaine Taylor as the parcel's shipper and listed Taylor's address as 9674 Colerain Avenue in Cincinnati, Ohio.

9. Narcotic traffickers often ship parcels via "US Next Day Air Early," which is the most expensive service UPS offers, and similar types of service so that the narcotics or narcotic proceeds are out of the narcotic traffickers' control for the least amount of time.  In addition, it is commonplace for narcotic traffickers to tape all edges of parcels containing narcotics or narcotic proceeds, in an attempt to limit the odor of narcotics emanating from the parcel and thereby decrease the chance of the parcel's detection by law enforcement narcotic detection sniffing canines.

10. Moreover, while the parcel listed the Colerain Avenue in Cincinnati as shipper Taylor's address, the listed Colerain Avenue address actually belonged to a third party, namely a UPS store in Cincinnati from which the parcel had actually been shipped.  Narcotic traffickers often decline to provide their actual address on parcels they ship, choosing instead to set forth on parcels either fictitious addresses or addresses of actual third parties like the UPS, in an attempt to decrease the likelihood that law enforcement will be able to track and identify the parcel's true sender and recipient and their respective actual addresses.

11. In addition to the above-referenced narcotic indicators, officers determined that the listed telephone number for the sender was an unregistered internet (VOIP) number.  VOIP numbers are difficult to trace and generate a telephone number

using an App or internet provider. When officers called the number, officers reached a non-personalized automated voicemail, and the telephone rang and continued to go to voicemail. Narcotic traffickers often set forth on parcels they ship false telephone numbers and decline to use their own personal telephone numbers, because providing the narcotic trafficker's actual telephone number increases the chance that law enforcement will identify the parcel's actual shipper and intended recipient.

12. A trained, state-certified narcotic detection canine gave a positive alert on February 5, 2020 to the parcel, which signifies that the parcel's contents had recently been in close proximity with narcotics. As of the February 5, 2020 positive alert, the canine had received training during which time the canine successfully found training aids that contained actual narcotics. The canine used to sniff the defendant currency alerts to the scent of narcotics for which the canine is trained, which are heroin, cocaine, marijuana, methamphetamine and ecstasy. In addition, the canine has also been trained with general currency in circulation, in order to make sure that the canine does not alert to the odor of currency but instead to the presence of narcotics on currency. Also, the canine has been certified since 2019, and has thereafter successfully passed the canine's monthly tests for recertification. As of the February 5, 2020 positive alert, the canine had been successfully used in cases in which narcotics and narcotic proceeds were found.

13. Officers obtained a State of California search warrant for the parcel. When officers executed the warrant and opened

the parcel, they found additional narcotic trafficking indicators, including that the defendant currency, which officers found inside the parcel, was packed in vacuum-sealed bags, concealed within a Sentry brand safe and in denominations consistent with narcotic trafficking. Narcotic traffickers often package narcotic proceeds within vacuum-sealed packages in an effort to mask from narcotic detection canines the odor of narcotics emanating from the funds. In addition, narcotic traffickers conceal narcotic proceeds in an effort to avoid their detection by law enforcement. Also, the defendant currency was in the following narcotic trafficking-consistent denominations: 68 ten dollar bills, 1,167 twenty dollar bills, 38 fifty dollar bills and 147 one hundred dollar bills.

<u>Controlled Delivery Of Parcel To Kelsey Walker</u>

14. Officers seized the parcel, removed the defendant currency therefrom, and conducted a controlled delivery of the parcel to the recipient named on the parcel (<u>i.e.</u>, Kelsey Walker, with a Rancho Cucamonga, California residential address listed on the parcel). In preparation for the controlled delivery of the parcel to Walker's residence, officers established surveillance at the Rancho Cucamonga, California address on February 5, 2020.

15. Based upon a California Department of Motor Vehicles photograph officers located (and officers through further investigation learned that Walker had three outstanding arrest warrants for traffic related offenses as well as prior felony convictions), officers saw an individual, whom officers identified as Walker, enter a Chevy Impala, move the vehicle

multiple times and look around as if he (Walker) were waiting for something. Once Walker was inside the residence, which was an apartment, the parcel was dropped off on the front porch.

16. Walker then exited the apartment, retrieved the parcel and reentered the apartment. Shortly thereafter, Walker hurriedly exited the apartment while on a cellular telephone, entered the Chevrolet Impala and drove around aimlessly and recklessly for several minutes as though he (Walker) was looking for something. Officers conducted a traffic stop on the vehicle and spoke with Walker.

<u>Officers Discussions With Walker During Traffic Stop</u>

17. Walker told officers that he was trying to locate the UPS driver that had left the parcel because Walker believed that his money from a parcel had been stolen. Officers told Walker that law enforcement had seized the money and had questions about the funds. Thereafter as described below, and as is customary with narcotic traffickers, Walker provided officers with multiple and inconsistent stories regarding the funds and their source.

18. First, Walker told officers that the funds constituted rent payments for apartments that had been shipped from his family in Cincinnati, Ohio. When officers stated that officers believed that the funds were related to narcotics, Walker denied it. In addition, Walker claimed that the renters usually paid Walker in cash, that Walker kept receipts proving that the seized funds were rent payments, and that the cash payments were kept in a bank.

19. Officers arrested Walker on the outstanding warrants. When officers looked inside the Chevy Impala's trunk, officers found multiple safes, each of which were the same type of Sentry brand safe that housed the defendant currency inside the parcel. Also, officers found in the vehicle's center counsel a receipt for $1,500.00 bearing the name Michelle Cephas.

Search Of Walker's Residence

20. Officers then transported Walker back to his apartment and searched the residence. During the search, officers found the following items.

21. In the master bedroom closet, officers found a backpack that contained in the front pocket multiple items of mail with Walker's name and address written on them, which thus confirmed that Walker resided at that location. Officers also found within the backpack several rounds of ammunition and a disassembled AR 15 semi-automatic rifle that had no serial number, appeared to be an unregistered assault rifle, had all parts needed to function properly, and was illegal for a convicted felon, like Walker, to possess. Possession of firearms is an indicator of narcotic trafficking.

22. Also, officers found in the backpack unused baggies of the type used to package narcotics for sale and containing logos advertising marijuana for sale. In addition, officers found on the master bedroom floor a Sentry brand safe similar to the safes found in the parcel and Walker's vehicle. Also, officers located throughout the residence multiple Sentry brand safes that were the same model as the Sentry brand safe found inside the parcel housing the Sentry brand safe containing the

defendant currency.  Furthermore, officers found in the kitchen and dining room several receipts and documents from UPS and FedEx showing prior shipments.

23.  In addition, officers also found in the master bedroom closet, on the floor, a suitcase that housed an open parcel addressed to Michelle Cephas.  Accordingly, this parcel evidences (together with the Michelle Cephas receipt found in Walker's vehicle) that Walker was engaged in narcotics activity in that Walker was mailing items to Cephas instead of receiving cash rent payments, as would at least be partially consistent with Walker's initial claim (discussed above) to officers that Walker was receiving cash rent payments from Walker's family members in Cincinnati.

Officers Booking Discussions With Walker

24.  Officers transported Walker to the Ontario Police Department for booking.  While in the booking area, Walker told officers the following.

25.  Walker stated the he grew up "gang bangin," was a "blood" and had been to prison.  While Walker stated that he worked as a plumber, Walker also told officers that the majority of his income was derived from rents he received from apartments Walker owned in Cincinnati and the majority of the funds inside the parcel was from money someone owed to him (Walker).

26.  As to the defendant currency, Walker told officers yet another story.  Walker now stated that he had traveled to Cincinnati to attend the funeral of his recently deceased aunt, and had discovered that his nephew had stolen settlement money from Walker's aunt who had previously received a $50,000.00

1  settlement.  In addition, Walker stated that his nephew had
2  stolen $30,000.00 of Walker's aunt's settlement that "they" took
3  back from the nephew and left with Walker's family, whom
4  thereafter had sent the funds (i.e., the $30,000.00) to Walker
5  in the parcel along with the remainder of the defendant
6  $40,620.00 in U.S. currency.  According to Walker, the remainder
7  of the defendant currency (i.e., all funds other than the
8  $30,000.00) constituted rent money owed to Walker from Walker's
9  renters.  Walker further claimed that he charged $700.00 per
10 month in rent for 8 units, and that rent was shipped to him
11 approximately every other month.
12     27.  To repeat the above, Walker during the traffic stop
13 first claimed that the defendant currency was derived in its
14 entirety from rent payments shipped by his family in Cincinnati,
15 next claimed during his booking discussion with officers that he
16 owned the apartments for which the rent was supplied and that
17 the majority (rather than the entirety) of the funds represented
18 rent payments, then claimed during his booking discussion with
19 officers that the minority (not the majority) of the seized
20 funds represented rent payments (as he advised $30,000.00 of the
21 defendant $40,620.00 currency represented funds stolen by his
22 nephew from Walker's recently aunt).  Further, notwithstanding
23 Walker's inconsistent claims, all of those claims were based on
24 Walker's contention that funds were derived from rentals on
25 apartments Walker owned, yet when officers asked Walker for the
26 address of the apartments (i.e., the purported source of the
27 Walker's claimed majority of his income and some of the seized
28 funds), Walker was unable to provide officers with either the

name or the address of those apartments.  It is common for narcotic traffickers to make inconsistent statements to law enforcement concerning the source of seized currency.

28.  Moreover, when officers asked Walker to identify the person or persons whom facilitated sending the rent money to Walker via UPS, Walker initially did not even provide a response.  Eventually, Walker stated that his family member "Tanikka Dremmond" would gather the rent and send it to Walker via UPS.

29.  Officers also asked Walker about the packages officers located during the search and were of the type used for packaging narcotics for sale.  Walker claimed that he just "ha[d] them" and had ordered them for someone that used to own a dispensary in Pomona.  However, Walker provided no details regarding this individual.

30.  Finally, at officers' request, Walker unlocked his cellular telephone, and officers found therein multiple pictures of marijuana, pictures of large amounts of U.S. currency and conversations pertaining to narcotic transactions.

Claimant In Seizing Agency Administrative Forfeiture Proceedings

31.  In the seizing agency administrative forfeiture proceedings that typically precede the filing of judicial forfeiture actions, an entirely new individual, named "Randall Cook," submitted a claim under oath averring that he was the owner of the defendant currency.  Cook made this under oath statement, notwithstanding the statements and inconsistent statements uttered by Walker to officers concerning the source and ownership of the funds.

FIRST CLAIM FOR RELIEF

32. Plaintiff incorporates the allegations of paragraphs 1-31 above as though fully set forth herein.

33. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

SECOND CLAIM FOR RELIEF

34. Plaintiff incorporates the allegations of paragraphs 1–31 above as though fully set forth herein.

35. Based on the above, plaintiff alleges that the defendant currency constitutes or is derived from proceeds traceable to a controlled substance violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D). The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: December 7, 2020

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United states Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

*/s/ Victor A. Rodgers*

VICTOR A. RODGERS
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, James Perlez, hereby declare that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 20, 2020 at Riverside, California.

_____
James Perlez